# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL ACTION NO. 5:23-cv-00159-MR-DCK

| | | |
|---|---|---|
| **ERIC RAMOND CHAMBERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **MEMORANDUM** |
| **WARDEN OF ALEXANDER** | ) | **OF DECISION AND ORDER** |
| **CORRECTIONAL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Motion for Summary Judgment [Doc. 79] filed by the Defendants Jeremy Gilliland, Robert Kalinowski, Michael Moody, and Dwight Morgan. Also pending is the Plaintiff's pro se Motion to Alter or Amend Judgment [Doc. 89].

## I. BACKGROUND

The pro se incarcerated Plaintiff Eric Ramond Chambers filed this action pursuant to 42 U.S.C. § 1983.[1] The unverified Amended Complaint[2]

---

[1] The Plaintiff initially filed this action in the United States District Court for the Eastern District of North Carolina; it was subsequently transferred to this Court where venue lies. [See Doc. 15].

[2] The superseded Complaints are also unverified. [See Docs. 1, 8, 18-1; see also Docs. 18 at 3; 26 at 3 (unsworn "Affidavits")]. As such, they cannot be considered on summary judgment as a forecast of evidence. See generally Goodman v. Diggs, 986 F.3d 493 (4th Cir. 2021) (a verified complaint is the equivalent of an opposing affidavit for summary

passed initial review with regard to incidents that allegedly occurred at the Marion Correctional Institution.[3] Presently pending are claims that Defendants Morgan, Gilliland, and Kalinowski used excessive force, and that Defendant Moody was deliberately indifferent to a serious medical need.[4] [Doc. 31: Am. Compl.; Doc. 32: Order on Initial Review].

The Defendants filed a Motion to Dismiss due to the Plaintiff's failure to exhaust his administrative remedies. [Doc. 52: MTD]. The Plaintiff argued that prison staff made the grievance procedure unavailable. [Doc. 31: Am. Compl; Doc. 59: MTD Resp.]. The Defendants did not dispute the Plaintiff's assertions, nor did they file complete grievance documents addressing the Plaintiff's claims of unavailability. [See Doc. 62: Memo. and Recom. at 8]. Accordingly, Court denied the Motion to Dismiss. [Doc. 66: MTD Order].

On November 19, 2025, the Defendants filed the present Motion for Summary Judgment and supporting materials. [Docs. 79, 80]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528

---

judgment purposes); 28 U.S.C. § 1746 (a declaration must be signed under penalty of perjury to satisfy the federal requirement for affidavits or sworn statements).

[3] Claims based on incidents that allegedly occurred at the Alexander CI were severed and dismissed without prejudice. [See Doc. 32]. The Plaintiff's present address is at the Bertie CI.

[4] The Plaintiff also asserted claims against Defendant Rhonda McLain. The Court dismissed these claims without prejudice pursuant to Fed. R. Civ. P. 4(m). [Docs. 62, 66].

2

F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the Defendants' summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 81]. The Plaintiff filed an unverified Response and supporting materials. [Doc. 83: MSJ Resp., Doc. 83-1: "Affidavit";[5] Doc. 83-2: Resp. Ex; Doc. 84: Medical Records]. The Defendants replied and sought leave to manually file video exhibits. [Doc. 85]. On February 26, 2026 the Court granted Defendants leave to manually file video exhibits, and the Plaintiff was granted the opportunity to file a surreply addressing the video exhibits. [Doc. 88]. The Plaintiff has not filed a surreply, and the time to do so has expired.

Meanwhile, on February 20, 2026,[6] the Plaintiff filed a "Motion to Alter or Amend Judgment" in which he seeks relief pursuant to Fed. R. Civ. P. 59(e). [Doc. 89: Motion to Alter or Amend]. He argues *verbatim*:

1. The Courts did not see the correct and accurate camera footage.

2. Courts made decision based on a write up, a "statement" by a officer that does not coincide with camera footage.

---

[5] The "Affidavit" is not signed under penalty of perjury and thus has no value as a forecast of evidence. See 28 U.S.C. § 1746.

[6] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Lewis v. Richmond City Police Dep't, 947 F.2d 733 (4th Cir. 1991) (applying prisoner mailbox rule to § 1983 case).

3. I was not present at court appearance and it's no way possible that what courts said was on footage was correct I can prove this.

4. I also presented a lot of evidence, grievances, sick calls, x-rays, and "surgery" reports, courts lied when said I didn't present evidence.

[Id.] (errors uncorrected).

These matters are now ripe for disposition.

## II.  MOTION TO ALTER OR AMEND JUDGMENT

Pursuant to Rule 59(e), a party may file a motion to alter or amend no later than 28 days after the entry of a final judgment. Fed. R. Civ. P. 59(e); Fayetteville Inv. v. Comm'l Builders, Inc., 936 F.2d 1462 (4th Cir. 1991) (Rule 59(e) applies only to a final judgment).

The Plaintiff's reliance on Rule 59(e) is unavailing because, until this juncture, there has been no final judgment entered in this case.  The Court's Orders on initial review and dismissing Defendant McLain pursuant to Rule 4(m) are not final judgments for purposes of Rule 59(e).  See generally Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003); Fed. R. Civ. P. 54(b).  In any event, the Plaintiff has offered no basis upon which to reconsider those Orders.  Moreover, the Motion to Alter or Amend is vague, conclusory, and nonsensical.  While the Plaintiff vaguely refers to camera footage, a court appearance, and a court decision, there has been

4

no hearing or fact finding in this case, and the Defendants had not yet filed any video footage as of February 20, 2026 when the Plaintiff filed his Motion to Alter or Amend. In short, there are no grounds upon which relief is warranted. The Motion to Alter or Amend is therefore denied.

## III.   SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there

is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole

> could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

## IV. FACTUAL BACKGROUND

The relevant forecast of evidence viewed in the light most favorable to Plaintiff shows the following.

On July 22, 2023, Sergeant Morgan and Officer Gilliland responded to the H-Unit hallway pursuant to a radio call for assistance. The Plaintiff and another inmate, whom the Court will refer to as "D.C.," were engaged in a fist fight. Sergeant Morgan, who arrived first, ordered the inmates to break it up, but they continued fighting. Morgan deployed his conducted energy weapon ("CEW" or "taser") towards D.C. Morgan then deployed a CEW towards the Plaintiff; however, D.C. fell in front of him and received the second charge. The Plaintiff began punching D.C. while he was

7

incapacitated. Sergeant Morgan unsuccessfully deployed CEW towards the Plaintiff and attempted to drive stun him to stop the assault on the other inmate. Gilliland and other officers then administered pepper spray to stop the Plaintiff. [Doc. 80-3: Morgan Decl. at ¶ 4; Document No. 80-4: Gilliland Decl. at ¶¶ 3-5].

Both inmates were arrested. Gilliand arrested the Plaintiff, while Morgan removed four probes from D.C.'s body. [Doc. 80-3: Morgan Decl. at ¶¶ 4-5]. Both inmates were decontaminated and sent to medical for evaluation. [Id. at ¶ 7]. Morgan surrendered his CEW to the shift officer in charge to allow the information to be downloaded. [Id. at ¶ 6].

On August 17, 2023, Officer Robert Kalinowski responded to the H-Unit hallway pursuant to a call for assistance. Upon arriving at the reported location, Kalinowski found the Plaintiff and another inmate, whom the Court will refer to as "O.D.," fighting. Kalinowski ordered O.D. to lie down, and O.D. complied. Kalinowski gave direct orders to the Plaintiff, but Plaintiff did not comply. Instead, the Plaintiff reached for his shoe and continued doing so despite direct orders to stop. Kalinowski administered pepper spray and the Plaintiff continued to refuse his orders. Kalinowski took control of the Plaintiff and placed him against the floor, then applied restraints. Other officers escorted the Plaintiff to decontamination. [Doc. 80-5: Kalinowski Decl. at ¶

4]. After the area was clear, Kalinowski secured a homemade knife, which was not used in the altercation, and batteries that O.D. had used to assault Chambers. [Id. at ¶ 5].

On August 17, 2023, Michael Moody, a licensed nurse practitioner ("LPN"), saw the Plaintiff for complaints of loose teeth and jaw pain. [Doc. 80-6: Moody Decl. at ¶¶ 2-3]. Moody performed an oral cavity check and evaluated the Plaintiff's mandible; he found no abnormalities. [Id. at ¶ 3]. However, due to the Plaintiff's complaints, Moody told the Plaintiff that he would be placed on a dental list for further evaluation. [Id.]. Moody referred the Plaintiff to a dentist and prescribed him ibuprofen for pain. [Id.].

On September 11, 2023, Moody answered a sick call from the Plaintiff for complaints of jaw pain. [Id. at ¶ 4]. Moody confirmed that the Plaintiff was still on the dental list. [Id.]. The Plaintiff agreed to wait and be seen by the dental provider. [Id.]. The Plaintiff received maxillofacial surgery to correct bilateral mandibular factures on September 26, 2023. [Doc. 84-1: Plaintiff's Ex at 14].

The Plaintiff submitted a grievance about the July 22 incident on July 24, 2023, complaining that he was "tazed multiple times and sprayed with mace after [he] had been disabled." [Doc. 80-1: MSJ Ex at 90]. A Step One Response found that no excessive force was used, and that no further action

9

was needed.  [Id. at 91]. The Plaintiff signed the Step One Response on August 10, 2023, indicating his agreement; the section to initiate an appeal was left blank.  [Id.].

The Plaintiff filed two grievances addressing the July 22 and August 17 incidents; however, these grievances were rejected because they addressed more than one incident.  [Id. at 92-96].

On November 19, 2023, the Plaintiff filed a third grievance addressing the July 22 incident.  [Id. at 97 (Grievance No. 3730-2023-HU4W-23668).  It was rejected because it was filed more than 90 days after the incident.  [Id. at 99].

The Plaintiff filed four grievance appeals during the relevant time period, none of which addresses the incidents at issue in this case.  [Doc. 80-2: Bass Decl. at ¶ 10; id. at 4-21 (grievances addressing fear of harm, protective custody, and segregation)].  In a verified administrative remedy statement signed December 7, 2023, the Plaintiff asserts that exhaustion of his administrative remedies was "[n]ot allowed."  [Doc.  22: Admin. Remedy Stmt. at 1].

Video footage from the July 22 incident shows the following:

00:16     As Plaintiff and other inmates are walking down the hallway, D.C. strikes the Plaintiff suddenly from behind.

00:18     Plaintiff turns around and the two inmates square up.

| | |
|---|---|
| 00:24 | They stop at the end of the hallway and continue fighting. |
| 00:29 | Sergeant Morgan enters the far end of the hallway and runs towards the inmates, shouting and drawing his taser. |
| 00:33 | Morgan deploys his taser. |
| 00:38 | Officer Bennett[7] deploys pepper spray. |
| 00:40 | Officer Gilliand arrives and deploys pepper spray. |

[See Document No. 88; H Wing 7-22-2022].[8]

Video footage from the August 17 incident shows the following:

| | |
|---|---|
| 00:15 | Plaintiff and O.D. walk down the hallway side-by-side; O.D. has his right fist clenched. |
| 00:19 | O.D. suddenly strikes the Plaintiff's face with his right fist, knocking the Plaintiff to the ground, and he continues striking the Plaintiff's face and head; one of the Plaintiff's shoes comes off. |
| 00:26 | O.D. steps away from the Plaintiff, who is still on the ground, and raises his hands. |
| 00:28 | Officer Kalinowski walks into view and O.D. gets on the floor. |
| 00:30 | The Plaintiff stands up and reaches for his shoe. |
| 00:32 | Kalinowski addresses the Plaintiff who stands, still holding his shoe; the Plaintiff looks at Kalinowski, then bends to put on his shoe; additional officers arrive. |

---

[7] Officer Bennett is not a defendant in this case.

[8] An alternate view of the incident appears at H Corr 7-22-2022; however, the view is distant and largely obscured.

| 00:34 | Kalinowski applies pepper spray. The Plaintiff ducks his head and continues to put on his shoe. O.D., who is still on the ground with his hands behind his back, opens his right fist and an object falls to the ground. |
|---|---|
| 00:35 | Kalinowski takes the Plaintiff to the ground; the Plaintiff's face and head do not appear to contact any surface. |
| 00:40 | The Plaintiff's hands are secured behind his back. |
| 00:57 | The Plaintiff is brought to his feet and escorted out of the hallway. |
| 01:05 | Kalinowski retrieves two items from the floor. |

[See Document No. 88; H-Wing 8-17-2023 video].

## V. DISCUSSION

### A. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by §

12

1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law ... requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion. Id. at 216.

The North Carolina Department of Adult Corrections ("NCDAC")[9] has established a three-step procedure governing submission and review of inmate grievances in its ARP. Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). Inmates are required to "properly" exhaust administrative

---

[9] Previously known as the North Carolina Department of Public Safety ("NCDPS").

remedies in accordance with ARP.  Woodford, 548 U.S. at 90; Moore, 517 F.3d at 726.  An inmate does not exhaust his administrative remedies until he completes all three steps of the ARP.  Moore, 517 F.3d at 726.

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies.  Jones, 549 U.S. at 216.  Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable. Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011).

Here, the undisputed forecast of evidence shows that the Plaintiff timely filed a grievance about the July 22 incident, but he agreed with the Step One determination that no excessive force had occurred and he did not appeal.  The Plaintiff raised the July 22 and August 17 incidents in two grievances which were rejected because they violated the APR requirement that each grievance may address only one incident.  The Plaintiff raised the July 22 incident in another grievance outside the 90-day APR time limit, so it was rejected.  Further, the Plaintiff successfully exhausted his remedies with respect to four other matters during the relevant period, demonstrating that he was aware of, and capable of using, all three steps of the APR.

14

The Plaintiff has not forecast any evidence that the APR was unavailable to him. His conclusory statement that exhaustion was "not allowed" is insufficient. [Doc. 22 at 1]; see generally United States v. Roane, 378 F.3d 382, 400-01 (4th Cir. 2004) ("conclusory assertions … [do] not suffice to stave off summary judgment"); see, e.g., Moore v. Bowman, 2026 WL 800754 (W.D. Va. March 23, 2026) (plaintiff's conclusory verified assertion that he filed a grievance regarding the facts of the complaint which received no response was insufficient to create an issue of fact to defeat summary judgment, in light of records to the contrary).

The Defendants have presented a forecast of evidence that demonstrates that the Plaintiff failed to exhaust his administrative remedies, and the Plaintiff has failed to present a forecast of evidence from which a jury could reasonably conclude that such remedies were not available. Accordingly, the Defendants' Motion for Summary Judgment will be granted due to the Plaintiff's failure to exhaust his administrative remedies.[10]

## B.   Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners from the

---

[10] While exhaustion dismissals are generally without prejudice, the instant dismissal will be with prejudice because there is no genuine dispute of material fact regarding the merits of the Plaintiff's § 1983 claims as discussed *infra*.

"unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To prove an Eighth Amendment violation, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and a subjective component—that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. Furthermore, the Supreme Court has made clear that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Here, the Plaintiff has failed to present a forecast of evidence that the force used by the Defendants during the July 22 and August 17 incident was sufficiently serious, or that such force was employed with a sufficiently culpable state of mind. As such, no reasonable jury could find that the force employed by the Defendants was excessive under the circumstances.

As the Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to the Defendants' use of excessive force, the Defendants' Motion for Summary Judgment will be granted on the Plaintiff's excessive force claims.

### C. Deliberate Indifference to a Serious Medical Need

Claims under 42 U.S.C. § 1983 based on an alleged lack of medical care or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To be found liable, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), *aff'd*, 535 F.2d 1250 (4th Cir. 1976).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted).

An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837

Here, the Plaintiff has failed to present a forecast of evidence that Moody knew of, and deliberately disregarded, a serious medical need. Rather, the undisputed forecast of evidence shows that Moody provided him pain medication and a dental referral during their first interaction; that Moody confirmed the dental referral during their second interaction, to the Plaintiff's apparent satisfaction; and that the Plaintiff ultimately received further care. No reasonable jury could find, under these circumstances, that Defendant Moody was deliberately indifferent. Accordingly, the Defendants' Motion for Summary Judgment will be granted on the Plaintiff's claim for deliberate indifference to a serious medical need.

**D.    Qualified Immunity**

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531

(4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

As discussed *supra*, the Plaintiff has not presented a forecast of evidence from which a jury could reasonably conclude that the Defendants violated his constitutional rights. As such, summary judgment for the Defendants would also be proper on this ground.

## VI.  CONCLUSION

For the reasons stated herein, the Plaintiff's Motion to Alter or Amend Judgment is denied, the Defendant's Motion for Summary Judgment is granted, and this action is dismissed with prejudice.

## <u>ORDER</u>

**IT IS, THEREFORE, ORDERED** that the Plaintiff's pro se Motion to Alter or Amend Judgment [Doc. 89] is **DENIED**; the Defendants' Motion for Summary Judgment [Doc. 79] is **GRANTED**; and this action is **DISMISSED WITH PREJUDICE**.

A Judgment consistent with this Memorandum of Decision and Order shall be entered contemporaneously herewith.

**IT IS SO ORDERED.**

Signed: May 20, 2026

Martin Reidinger
Chief United States District Judge